Good morning. May it please the Court? I'm Philip Trevino under appointment on behalf of the petitioner appellant. There is much in this record with which it seems the parties are in agreement, and it starts with the very fact that my client from the beginning, at the time of his arrest, agreed that he engaged in clearly prohibited conduct. It was accurate, as the prosecution charged, that he did enter the bank and undertake to rob that bank. And it's a very unfortunate, tragic day for many of those people who are in the bank and I'm sure still suffer to this day. My client also suffers in a particular respect, and that's what we ask the Court to focus on, which is whether or not, in fact, the jury should have been instructed with the duress instruction. And I have a great respect for the trial court that presided over the trial, which clearly formed very strong views about the lack of merit as to that defense in my client's predicament. But I also must take issue with it in a very fundamental level, which is whether or not it was appropriate to give that instruction, termed in many respects upon what someone, whoever the fact finder was,  considered to be the immediacy of the threat which my client perceived himself to face. Could I reframe your argument for a moment? Please. As the Supreme Court never forgets to remind us, we're under AEDPA here. And so what we're looking for is in rejecting the argument you're making to us right now, the State Court rejected that, the State Appeals Court, and we have to decide whether the State Appeals Court's decision was contrary to or an unreasonable application of Supreme Court precedent. So can you start by explaining to us what the Supreme Court precedent is and why the State Appeals Court rejection of that argument was contrary to it? It would be anchored in the cases that discuss a defendant's right to an instruction on his theory of his defense, and that being a matter for the jury itself to decide. But the theory of defense has to be something that the facts, the evidence would justify, doesn't it? It does. He couldn't say insanity. You've got to instruct on insanity unless you've got some kind of evidence that suggests there's basis to the defense. And when we talk about mental health defenses, there are different tests that are in effect. What evidence was there that he could satisfy the California requirements for duress? I mean, look at the instruction for duress. Was there evidence that he could support that? That he made phone calls to the individual, the loan shark, who was threatening him just immediately prior to being placed in the company of the cohorts with whom he then traveled to the bank to perpetrate the robbery. The fact that despite being in the presence of those people, he went ahead and unloaded the firearm, demonstrating he did not hope or he didn't intend and hoped that no one would actually be injured during the robbery. Isn't that all just a matter of state law? Can we look at whether the state court made a mistake as a matter of state law? It would have to be something very egregious in order to rise to some due process violation, right? It would have to be, Your Honor, and I suggest that this record presents that. I recognize and have great deference to what ADEPA calls for, and I understand the restraints this Court faces in not revisiting findings of fact that are made by the state courts in habeas proceedings. The problem unique to this record is that those findings, such as they are, originated in the trial judge's formulation of his assessment of the record, such as it was at that point in time. But it was probably based on your client's statements, don't you think? Oh, a great deal of it is based on my client's statements. But the statements are both inculpatory and exculpatory. They're both inculpatory in the sense that they admit his involvement in the offenses, but they are exculpatory to the extent that they present the basis, I believe, and suggest to the Court for the proper giving of that particular instruction. It was fully within the realm of all possibilities for a jury properly instructed to have still found him guilty. The problem here is just simply that it was not that jury didn't receive that specific instruction. But once ---- I don't see how they could have found anything else. I mean, California instruction requires a reasonable person to fear his life would be in immediate danger. This guy takes the bullets out of the gun. If he's in immediate danger and he's in fear of that, does he take the bullets out of the gun? He takes the bullets out of the gun because they're going to rob a bank where he hopes none of the people in the bank will be injured. But that suggests that if he thought he was in immediate danger, they're coming for him. He keeps that gun to protect himself. He might fear future danger, but as I understand the California instruction, that's not sufficient for duress. And I respect that and understand that that's a finding the jury might have made in the argument the Court just puts forth. But based on his statement, that's a finding the jury might have made. Based on his statement, that's a ---- Yes. And based on the extrinsic evidence such as we know that those are findings that the jury might have made. But the question we have is whether the California Court was unreasonable in concluding that the jury would not have made that finding. I have trouble seeing what's unreasonable about it because I don't see how the evidence would support a jury verdict in your client's favor on that. And that's only because the unreasonableness of it is the intrusion of the trial court into the province of the jury's fact finding. It isn't an unreasonable read of the record if, in fact, we were talking strictly about a judicial finding. Let me step out of this thought pattern for a moment and go to one where I think the illustration is much cleaner and much clearer. When a reviewing court sitting in habeas at the state level assesses a lawyer's performance and says this lawyer was not ineffective, in a pretrial strategic decision, knowing what that lawyer knew at that point in time, a state court habeas court says this court is satisfied that was not ineffective assistance. That's a bulletproof finding, a fact for which this court owes great deference, pursuant to ADEPA, to apply exactly the analysis that Your Honors are using right now. The difference here is we're not talking about that type of a strictly legal fact that was found by the state habeas court. We're talking about what should have been for the province of the jury alone. Well, following up on your ineffective assistance example, the other prong of Strickland requires a showing of a reasonable probability of prejudice, not unlike the Breck requirement for any habeas relief. And that's something else. I mean, it's exactly the same inquiry in my mind that has me stumped here. I don't see how your client could reasonably have expected or there's a reasonable probability of a different result from the jury on this evidence. Whether the direct instruction is given or not, assume it's given, how does the jury come back with a different result? And I will agree with the court if, in fact, we are appropriately using the habeas standard pursuant to ADEPA. And the point where everything cleaves apart in petitioner's view is that's where the misstep first occurred. It should not have gone into that path in this analysis at that first instance. But when it did and when the trial judge articulated the views that he articulated, that's essentially what just continued to be repeated at each level of ensuing review. And I recognize it looks like a wall of strong lower court judicial determinations to which this Court must adhere. But I respectfully differ simply because at its genesis, that was not for the trial court to decide in the way in which it did. The trouble I have with your argument is just based on his statement, he was not concerned about immediate threat to his life, was he? Just based on his statement. Take nothing else but what he said. Respectfully, I wish I could agree with the court. I just simply can't because he... Well, because you represent your client. I'm doing well at it. There were alternatives. His fear was not that he was in imminent danger. His fear was something that was going to happen to him in the future. Isn't that what the record shows? The record shows that he feared hostile consequences, potentially even his own death in the immediacy following this time period. In other words, and I believe respectfully, that it comports with the California duress jury instruction, that it was an immediate fear. He understood the vehicle in which he was traveling to the bank with the cohorts to commit the robbery was being followed. It was his understanding, and his statements include this, that he believed that Corky, the violent individual who threatened him, who was the gang leader and the loan shark, that Corky was potentially... But who wasn't there. Well, he was potentially right on his tail. And it was, for all he understood and for part of his emotional state believed to be the case, was that if he didn't go through with it, then when he got out of that vehicle that was carrying him, he might be killed on the spot. I understand it's not immediacy in the sense that the individual wasn't in the vehicle with him, but he's in the vehicle immediately behind. I respectfully suggest to the Court that was a factual interpretation for the jury to have made. And that's the gravamen of the complaint. There is one point, if I may, just to clarify. I apologize if the AOB was not adequately clear on this precise point. We don't disagree, actually, with Respondent that the sentencing enhancement argument is subject to harmless error analysis. I recognize and adhere to and defer to, of course, the U.S. Supreme Court's precedent under the lien code. I'm just simply saying it won't carry the day with regard to the claim here that my client has before the Court. And unless the Court has further matters, I'll submit. Thank you. Good morning, Your Honors. Anthony DiSilva, Deputy Attorney General for the Respondents. May it please the Court. In this case, there was not substantial evidence for the jury to be instructed on duress under California law. There must be substantial evidence, substantial factual basis for such an instruction. At best, if you were to believe Mr. Beamon, he might have made out the subjective component of that, but not the objective. There were threats or a menace that would cause a reasonable person to believe that his life was in imminent danger if he did not commit the crime. Not only did the statements that he attributed to Corky that something might happen to him in the future or his family, whatever, not meet that threshold, but his testimony at trial itself didn't meet that threshold. He said that basically no one held a gun to his head, no one threatened his fiancée or his family, and in fact, after the crimes, he went to the liquor store. That doesn't show the type of imminency that would require such an instruction. And the State test itself is very similar to the Federal test. You're not going to make any factual findings, but the fact that he went to the liquor store afterwards isn't adding to your position because he had committed the crime by that time, and his fear, if you believe what he said, was what would happen to him if he didn't commit the crime. Yes, Your Honor. I think it showed he was an active participant, as the record shows, and he was actually quite pleased that he had completed the crime. Actually, people at liquor stores sometimes are not feeling too pleased with themselves either, so. True, Your Honor. If we disagreed with you and said, well, it's very close and maybe there was enough evidence there to support a duress instruction and the trial court was wrong, does that mean that if we thought there was an error, does that mean that under our AEDPA analysis, that the California Court of Appeals' decision to the contrary was unreasonable or contrary to Supreme Court precedents, the precedents that opposing counsel indicated? Possibly, Your Honor, because it would lead to the harmless error analysis, which is what the district court looked at and determined that the state appellate court's harmless error analysis itself was objectively reasonable. For many of the facts, it showed he was an active participant, if not the principal participant in the crime, and even if somehow there had been an instruction of duress, the jury would have probably come back beyond a reasonable doubt that he was guilty of the charged crime of the robberies and the false imprisonments. So you're saying under Brecht, as Judge Clipson was noting, it wouldn't have a substantial injurious effect, a mistake by the trial court? Yes, Your Honor. And that that determination by the Court of Appeal itself was objectively reasonable. And insofar as the instructional error claim, I think we've covered that sufficiently. I'd like to move on to the sentencing error. As we note, the California Court of Appeal relied on the first black decision, which was constitutional error, but the error was harmless in this case. In addition to you need one fact in aggravation, and here there was threat of great bodily injury, great bodily harm, as we have discussed. There was evidence that Mr. Beeman and his co-defendant pointed guns, weapons at the bank employees' faces, bodies, and there was testimony from some of the people in the bank that they feared for their life. In the course of the robbery, there was movement, a tussle, the co-defendants bumped into each other, a gun was dropped by Mr. Beeman, which caused more fear, and the security guard also fired a shot within the building itself. So there was more than enough evidence from which a jury would have found the aggravating factors. And as the district court found, it did not have any grave doubt in coming to that determination as the harmless error analysis under Washington v. Requenco and Butler v. Curry from this case require. Unless the court has any questions, I'll submit on the brief and the argument. Thank you. Thank you. Mr. Verdino, you have a few seconds left. Anything you want to add? Only if the Court has questions of me, Your Honor. Apparently not. We thank both of your helpful arguments. The case just argued is submitted.
judges: Farris, Clifton, Ikuta